UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MEYBERG et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SANTA CRUZ, et al., <br><br> Defendants. | Case No. 19-cv-00700-NC <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** <br><br> Re: Dkt. No. 96, 98 |

Before the Court are two motions to dismiss. One motion is brought by defendants City of Santa Cruz and various City officials and employees (collectively, "City Defendants"). The other is brought by Ed Guzman, Club Ed, Inc., and Richard Suchomel (collectively, "Club Ed Defendants"). Both groups of defendants seek dismissal of plaintiffs David Meyberg and New Santa Cruz Surf School, LLC's third amended complaint, alleging an antitrust conspiracy and various constitutional claims. Defendants contend that the City's municipal ordinance is immune to federal antitrust statutes and Plaintiffs have not identified any constitutional violations. Because Plaintiffs have been unable to state a claim after three attempts, the Court GRANTS the motions to dismiss without leave to amend.

# I. Background

## A. Factual Allegations in the Complaint

The factual allegations in Plaintiffs' third amended complaint are assumed true for the purposes of the motions to dismiss.

David Meyberg is a resident of Santa Cruz County. *See* Dkt. No. 94 ("TAC") ¶ 4. In 2007, he represented Santa Cruz Surf School, Inc. in litigation against the City of Santa Cruz. *Id.* ¶ 32. That litigation concerned Santa Cruz Surf School's efforts to operate a surf school at Cowell Beach in Santa Cruz. *Id.* The lawsuit settled, resulting in the City creating a "Surf School Ordinance," which limited the number of surfing schools on Cowell Beach to four schools. *Id.* ¶¶ 23, 33. The City also granted the Santa Cruz Surf School a permit to operate. *Id.* ¶ 33.

Some time later, the owner of the Santa Cruz Surf School was arrested for misconduct and was no longer able to operate the surf school. *Id.* ¶ 35. Meyberg then purchased the school from the owner. *Id.* ¶ 36. Because the City required surf schools to carry specific insurance policies and the insurance carriers for the Santa Cruz Surf School were unwilling to continue coverage, Meyberg reorganized the company to the "New Santa Cruz Surf School, LLC." *Id.* The New Santa Cruz Surf School, however, did not have a permit and Meyberg has been unable to operate the surf school. *Id.* ¶ 37.

Meyberg alleges that the City has been retaliating against him for his role in the 2007 litigation. *Id.* ¶¶ 38–40. Among those acts of retaliation include the following. The City Park and Recreation Department refused to issue Meyberg a permit to operate a surf school. *Id.* ¶ 40(A). City police officers noted license plate numbers of Meyberg's students' vehicles and cited Meyberg for operating a surf school without a permit. *Id.* ¶ 40(B). City Planning Department officials have taken adverse actions against Meyberg's property including wandering onto the curtilage of Meyberg's home and refusing to accept his building plans. *Id.* ¶ 40(C). Meyberg also alleged that he was harassed by a rival, permitted surf school located on Cowell Beach called Club Ed. *Id.* ¶ 40(B), (D).

**B.     Procedural History**

On May 14, 2019, Plaintiffs filed their first amended complaint alleging 33 claims for relief. *See* Dkt. No. 1. At the first case management conference, Plaintiffs agreed to pare down their complaint and subsequently filed a second amended complaint alleging only seven claims for relief. *See* Dkt. Nos. 63, 67, 70. Club Ed Defendants also filed various counter- and cross-claims. *See* Dkt. No. 40. The cross-claims have since been voluntarily dismissed. *See* Dkt. No. 86.

City Defendants moved to dismiss, arguing that the second amended complaint was unclear and confusing. *See* Dkt. No. 79. The Court agreed and granted the motion, ordering Plaintiffs to clearly identify the challenged actions and how those actions connected to their claims for relief. *See* Dkt. No. 88.

Plaintiffs filed their third amended complaint on February 12, 2020. *See* TAC. Defendants again move to dismiss. *See* Dkt. No. 96, 98. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 18, 41, 42.

## II.    Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III. Discussion

### A. Federal Rule of Civil Procedure 8

#### 1. City Defendants

The Court previously dismissed Plaintiffs' second amended complaint for failing to "identify[] each Defendants' actions and how those actions violated the Sherman Act . . . and how Defendants retaliated against them." Dkt. No. 88 at 1–2. As to several of the City Defendants, Plaintiffs have indeed failed to remedy the Rule 8 deficiencies. In particular, the third amended complaint names City Planning Department employees Joe Granda and Laura Landry as defendants (*see* TAC ¶ 11), but makes no specific allegations against them. Plaintiffs also name City employees Lee Butler, Eric Marlatt, Nancy Concepcion, and Jacob Rodriguez as defendants (*see id.*) but provide only vague allegations that they took "unlawful adverse actions" against Meyberg's property.

These allegations are insufficient to satisfy Rule 8's pleading requirement. They fail to provide any notice of what conduct allegedly violated the Sherman Act or their First Amendment rights. Because Plaintiffs have been unable to cure their complaint's pleading deficiencies after three attempts, the Court GRANTS the City Defendants' motion to dismiss as to Granda, Landry, Butler, Marlatt, Rodriguez, and Concepcion without leave to amend.

Likewise, it remains unclear as to what actions the remaining individual City Defendants have taken that constitute a Sherman Act violation. Plaintiffs identified specific acts by Carol Scurich and various police officers that they contend were intended to retaliate against Meyberg's role in prior litigation, but there is no explanation or allegation tying those actions to their Sherman Act claim. *See id.* ¶ 40. Indeed, Plaintiffs' opposition to City Defendants' motion focuses solely on the City's municipal ordinance that limits the number of commercial surfing schools to four schools. *See, e.g.* Dkt. No. 115 at 1–13. There is no indication that the remaining individual City Defendants conducted any action related to the crux of Plaintiffs' Sherman Act claim. Accordingly, the Court GRANTS City Defendants' motion to dismiss each individual City Defendant

from Plaintiffs' first claim under the Sherman Act.

On the other hand, Plaintiffs have alleged enough facts to satisfy Rule 8 pleading standards for their Sherman Act claim as to the City itself. Plaintiffs assert that the City's municipal ordinance is an antitrust violation because it restricts competition to just four surfing schools. This allegation is sufficient to give the City fair notice of the challenged conduct under Rule 8.

Plaintiffs have also specifically identified the actions it believes Scurich and various police officers have taken that constitute First Amendment retaliation. *See* TAC ¶ 40. Plaintiffs also identified the protected speech that was the subject of the alleged retaliation. *See id.* ¶ 38. These allegations satisfy Rule 8's notice standard.

In sum, City Defendants Granda, Landry, Butler, Marlatt, Rodriguez, and Concepcion are dismissed from this lawsuit entirely. City Defendants Scurich, Martinez, Baker, and Auldridge are dismissed as to Plaintiffs' first claim under the Sherman Act. Dismissal is without leave to amend because Plaintiffs have been unable to cure the Rule 8 deficiencies in their complaint after three tries.

### 2.  Club Ed Defendants

Plaintiffs' allegations as to the Club Ed Defendants again face similar deficiencies. There is no allegation to suggest that the Club Ed Defendants made any agreement with the City to restrain trade. *Cf. Twombly*, 550 U.S. at 556 (to plead an antitrust conspiracy, a plaintiff must allege "enough factual matter (taken as true) to suggest an agreement was made."). The *only* allegation that comes close to suggesting an agreement by the Club Ed Defendants is Plaintiffs' conclusory assertion that the "CITY utilizes GUZMAN, CLUB ED as its agent." TAC ¶ 20. There is, however, no factual support for this assertion elsewhere in the complaint. Instead, the complaint makes clear that the Club Ed Defendants are merely recipients of City permits that allow them to operate commercial surfing schools on Cowell Beach. *See id.* ¶ 23. "[A]llegation[s] of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

Plaintiffs' allegations regarding the Club Ed Defendants' involvement in the alleged

1  First Amendment retaliation are similarly thin. There is no indication that the Club Ed
2  Defendants were state actors or even knew that Plaintiffs engaged in protected First
3  Amendment activity.
4        Accordingly, the Court GRANTS the Club Ed Defendants' motion to dismiss as to
5  all claims. Dismissal is without leave to amend because Plaintiffs have been unable to
6  cure the Rule 8 deficiencies in their complaint after three tries.

### B.   Sherman Antitrust Act

Section 1 of the Sherman Act broadly prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. In *Parker v. Brown*, 317 U.S. 341 (1943), however, the Supreme Court held that the Sherman Act does not "restrict the sovereign capacity of the States to regulate their economies [and] should not be read to bar States from imposing market restraints 'as an act of government.'" *Chamber of Commerce of the United States v. City of Seattle*, 890 F.3d 769, 781 (9th Cir. 2018) (quoting *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 224 (2013)). Under this doctrine, "nonstate actors carrying out the State's regulatory program" may also be immune from the Sherman Act in limited circumstances. *Id.* (quoting *Phoebe Putney*, 568 U.S. at 224–25). Municipalities and other political subdivisions are considered "nonstate actors" for the purposes of this doctrine because they are not themselves sovereign. *Id.* at 782.

The Supreme Court has articulated a two-part test to determine whether the anticompetitive acts of nonstate actors are entitled to immunity. *See Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). First, "the challenged restraint [must] be one clearly articulated and affirmatively expressed as state policy." *Id.* Second, the state policy in question must be actively supervised by the State. *See Chamber of Commerce*, 890 F.3d at 782. This prong of the test is normally not relevant when the challenged activity is conducted by local government entities. *Id.* (quoting *Phoebe Putney*, 568 U.S. at 226). But "[w]here state or municipal regulation by a private party is involved, however, active state supervision must be shown, even where a clearly

6

articulated state policy exists." *Id.* (quoting *Hallie*, 471 U.S. at 46 n.10).

Here, Plaintiffs allege that the City Defendants and Club Ed Defendants illegally limited the number of commercial surf schools available at Cowell Beach. *See* TAC ¶¶ 22–23. This alleged restraint is set out in Santa Cruz's municipal code, which provides in relevant part:

> The city parks and recreation department may issue up to a total of four permits, including the city's concessionaire or licensee, authorizing surf school activities at Cowell Beach Recreation Area. The city parks and recreation department may issue fewer than four permits, in its discretion, to effectuate the purposes of this chapter. The permits shall be nontransferable, and they shall expire five years after the date of issuance.

Santa Cruz Mun. Code § 13.14.030(B), available at https://www.codepublishing.com/CA/SantaCruz/html/SantaCruz13/SantaCruz1314.html. Defendants argue that this ordinance is lawful and immune from the Sherman Act under the state-action immunity doctrine.

### 1. Clear-Articulation Test

As outlined above, anticompetitive acts of nonstate actors are entitled to immunity only if they meet the clear-articulation test. *Midcal*, 445 U.S. at 105. To pass the clear-articulation test, the "'anticompetitive effect' in dispute should be the foreseeable result of what the State authorized." *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1010 (citing *Phoebe Putney*, 568 U.S. at 226–27). "It is not necessary, however, for a state legislature to 'expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects.'" *Id.* (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43 (1985)).

Recent Ninth Circuit law outlines a two-step inquiry for this prong. The first "relevant question is whether the regulatory structure which has been adopted by the state has specifically authorized the conduct alleged to violate the Sherman Act." *Chamber of Commerce*, 890 F.3d at 782 (quoting *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99

1   F.3d 937, 942 (9th Cir. 1996)). "The relevant statutory provisions must plainly show that
2   the [state] legislature contemplated the sort of activity that is challenged, which occurs
3   where they confer express authority to take action that foreseeably will result in
4   anticompetitive effects." *Id.* (quotation marks and emphasis omitted) (quoting *Hass v. Or.*
5   *State Bar*, 883 F.2d 1453, 1457 (9th Cir. 1989)). The state must "clearly intend[] to
6   displace competition in a particular field with a regulatory structure . . . in the relevant
7   market." *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 64
8   (1985).

If there is express state authorization of the challenged activity, the court must "then turn to the concept of foreseeability, which is to be used in deciding the reach of antitrust immunity that stems from an already authorized monopoly, price regulation, or other disruption in economic competition." *Id.* (quotation marks and emphasis omitted) (quoting *Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079, 1082 (9th Cir. 2010)). Even a foreseeable result, however, cannot displace the express authorization requirement. *Id.*

Defendants argue that the California Coastal Act, Cal. Pub. Res. Code §§ 30001 *et seq.* and Cal. Gov. Code § 65850 are "clearly articulated and affirmatively expressed . . . state polic[ies]" that satisfies the first prong of the state-action immunity doctrine. *Midcal*, 445 U.S. at 105.

In relevant part, Cal. Pub. Res. Code § 30001 provides:

(c) That to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to protect the ecological balance of the coastal zone and prevent its deterioration and destruction.

(d) That existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well–being of the people of this state and especially to working persons employed within the coastal zone.

8

Cal. Pub. Res. Code § 30001(c), (d); *see also id.* § 30001.5. And in Cal. Pub. Res. Code § 30004, the California legislature declared that "[t]o achieve maximum responsiveness to local conditions, accountability, and public accessibility, it is necessary to rely heavily on local government and local land use planning procedures and enforcement." California further empowers municipal governments to "[r]egulate the use of buildings, structures, and land as between industry, business, residences, open space, including agriculture, recreation, enjoyment of scenic beauty, use of natural resources, and other purposes." Cal. Gov. Code § 65850.

These statutes expressly delegate authority to the City to "regulate the use of . . . land" for recreational and commercial purposes. *Id.* The City's ordinance restricting the number of commercial surfing schools on Cowell Beach is a regulation of the use of land for recreation and business purposes. It therefore falls within the scope of the California Legislature's express authorization. Indeed, Plaintiffs do not dispute that the City's ordinance is consistent with state law. *See* Dkt. No. 115 at 11.

Instead, Plaintiffs argue that City Defendants must show that the California "determined that it elects to have its State policy served in an anticompetitive manner." *Id.* Plaintiffs overstate the law.

The Supreme Court has explicitly rejected "the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition." *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 373 (1991). Instead, "[i]t is enough . . . if suppression of competition is the 'foreseeable result' of what the statute authorizes." *Id.* Put differently, the challenged actions satisfy the clear-articulation test when it is the "ordinary result of the exercise of authority delegated by the state legislature" and the legislature "affirmatively contemplated the displacement of competition." *Phoebe Putney*, 133 S. Ct. at 1013. "The indication must be more than mere neutrality but need not rise to the level of explicit authorization." *United Nat'l*, 766 F.3d at 1010.

Here, the California Coastal Act makes clear that the California Legislature has

9

affirmatively contemplated the displacement of competition.  As the Supreme Court recognized, "[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants."  *Omni*, 499 at 373.  The Coastal Act expressly contemplates the "orderly, balanced utilization and conservation of coastal zone resources" and the maximization of "public recreational opportunities in the coastal zone consistent with sound resources conservation principles."  Cal. Pub. Res. Code § 30001.5(b), (c).  The "orderly [and] balanced utilization" of coastal zone resources will naturally cause some individuals to be unable to use those resources.  *Id.*  And by "rely[ing] heavily on local government and local land use planning procedures and enforcement," the California Legislature foreseeably authorized anticompetitive conduct by local municipalities to achieve its objectives.  *Id.* § 30004.

### 2.  Active Supervision

"The active supervision requirement 'serves essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy.'"  *United Nat'l*, 766 F.3d at 1011 (quoting *Hallie*, 471 U.S. at 46-47).  It does not apply to a municipality, however, as "there is little or no danger that it is involved in a private price-fixing arrangement."  *Id.*  "The danger that it may seek 'purely parochial public interests at the expense of more overriding state goals' is satisfactorily addressed by the clear-articulation test."  *Id.*

Here, neither party contends that the active supervision requirement applies to the City.  The municipal ordinance makes clear that the only party responsible for the issuance of surf school permits is the City's Park and Recreation Department.  *See* Santa Cruz Mun. Code § 13.14.030(B).  This is not a case where private actors are entrusted with state regulatory authority or conferred with significant discretion to engage in price-fixing arrangements.  *See, e.g.*, *Chamber of Commerce*, 890 F.3d at 788–89.

Because both prongs of the *Midcal* test is satisfied, the City is entitled to state-action immunity from the Sherman Act.  Accordingly, the Court GRANTS the City

1  Defendants' motion to dismiss Plaintiffs' first claim without leave to amend.

## C. First Amendment Retaliation

To state a First Amendment retaliation claim, a plaintiff must allege facts showing that:

> (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

*O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Here, Plaintiffs fail to allege sufficient facts as to the third element. There is no factual allegation suggesting that any of the City police officers or Scurich were aware of Meyberg's involvement in the 2007 litigation against the City, much less any plausible suggestion that Meyberg's now decade-old litigation history was a substantial or motivating factor in their conduct. Accordingly, the Court GRANTS the City Defendants' motion to dismiss Plaintiffs' second claim without leave to amend.

## D. Fourth Amendment

Plaintiffs' Fourth Amendment claim is asserted against the City and City Defendant Donald Timoteo. *See* TAC ¶ 44–55. According to Plaintiffs, Timoteo violated Meyberg's Fourth Amendment rights when Timoteo walked onto the curtilage his home to view the interior of his garage. *Id.* The garage, Plaintiffs allege, was not along the route to Meyberg's front door. *Id.* ¶ 50–51.

Plaintiffs now concede that Timoteo is entitled to qualified immunity for his alleged violation, but contends that the City remains liable. *See* Dkt. No. 115 at 18. But Plaintiffs have not pointed to any municipal policy or custom that animated Timoteo's actions. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *accord Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Under *Monell*, Plaintiffs cannot hold the City liable without such allegations. *Id.*

1    Accordingly, the Court GRANTS the City Defendants' motion to dismiss Plaintiffs'
2 third claim without leave to amend.

## IV. Conclusion

The Court GRANTS the City Defendants and the Club Ed Defendants' motions to dismiss. Dismissal is without leave to amend because Plaintiffs have been unable to cure the deficiencies in their complaint after three attempts. Further amendment would be futile.

The only claims that remain are Guzman, Club Ed, and Suchomel's counter-claims against Meyberg and the New Santa Cruz Surf School. *See* Dkt. No. 40. Given the dismissal of the original claims, the parties must file a brief as to whether the counter-claims should be dismissed for lack of subject matter jurisdiction by **May 22, 2020**.

**IT IS SO ORDERED.**

Dated: May 8, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge